**Bradley MARCUM, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 06A01–0110–CR–374.**

Court of Appeals of Indiana.

July 24, 2002.

Publication Ordered Aug. 7, 2002.

Bryan L. Cook, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cecelia K. Hemphill, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Bradley Marcum appeals his conviction for domestic battery, a Class A misdemeanor. We reverse.

### Issue

We restate the sole dispositive issue before us as whether the trial court erred in admitting into evidence K.M.'s written statement to police.

### Facts

The facts most favorable to this verdict are that on the evening of November 1, 2000, there was a physical confrontation between Marcum and his wife, K.M. On November 3, 2000, Marcum and his wife had another dispute, after which Marcum called the police to file a battery report against her. Marcum was advised to go to the police department the next morning to give a written statement. Marcum then called K.M. and told her he was going to file a battery report against her the next morning. On the morning of November 4, 2000, before Marcum filed his written statement regarding the events from the previous night, K.M. filed a report alleging that Marcum had battered her on November 1, 2000.

The State later charged Marcum with domestic battery, a Class A misdemeanor, and intimidation, a Class D felony. At trial, the State called K.M. to testify about the altercation that took place on November 1, 2000. K.M. recanted her claim that Marcum had battered her, and the State offered into evidence the written statement that she had given to police on November 4, 2000. The trial court admitted the written statement into evidence, over Marcum's numerous objections, on the basis that the statement was an excited utterance and/or a recorded recollection. During its closing, the State urged the jury to carefully consider the written statement K.M. gave to police. The jury found Marcum not guilty of intimidation, but guilty of domestic battery. Marcum now appeals.

### Analysis

Marcum contends that the written statement K.M. gave to police on November 4, 2000, was improperly admitted hearsay and, therefore, his conviction should be reversed. When reviewing a trial court's rulings on the admissibility of evidence, we apply the abuse of discretion standard. *Thompson v. State,* 671 N.E.2d 1165, 1171 (Ind.1996). Even if the trial court errs in ruling on the admissibility of evidence, we will only reverse if the error is inconsistent with substantial justice. Ind. Trial Rule 61; *Timberlake v. State,* 690 N.E.2d 243, 255 (Ind.1997).

Indiana Evidence Rule 801(c) defines hearsay as an out-of-court statement of-

fered in court to prove the truth of the matter asserted. Hearsay evidence is generally inadmissible pursuant to Indiana Evidence Rule 802. Indiana Evidence Rule 803, however, enumerates exceptions to the hearsay rule.

 Indiana Evidence Rule 803(2) provides that an excited utterance is admissible even if the declarant is available as a witness. In order for a hearsay statement to be admitted as an excited utterance, three elements must be present:

(1) a startling event has occurred; (2) a statement was made by a declarant while under the stress of excitement caused by the event; and (3) the statement relates to the event.

Ind. Evidence Rule 803(2). This is not a mechanical test; admissibility turns on whether the statement was inherently reliable because the witness was under the stress of the event *and* unlikely to make deliberate falsifications. *Jenkins v. State,* 725 N.E.2d 66, 68 (Ind.2000). The heart of the inquiry is whether the declarant was incapable of thoughtful reflection. *Yamobi v. State,* 672 N.E.2d 1344, 1346 (Ind.1996).

In *Impson v. State,* the court admitted a victim's statement made to police "immediately after the battery occurred, while she was crying and still upset because of the stress of the attack." 721 N.E.2d 1275, 1282 (Ind.Ct.App.2000). However, statements that the victim made to a police officer and an acquaintance several hours after the incident, where the victim had calmed down enough to invite friends to a cookout, were not admissible under the excited utterance and present sense im-

pression exceptions to the hearsay rule. *Id.* at 1284.

In *Lieberenz v. State,* however, our supreme court affirmed the trial court's decision to admit statements that a rape victim made to relatives and police after a number of hours had passed since the attack. 717 N.E.2d 1242, 1246 (Ind.App.1999). The court based its decision on the descriptions of the victim's physical and psychological state, and capability of thoughtful reflection and deliberation in order to fabricate her story. *Id.* The victim was still visibly shaken and unable to speak clearly to police and relatives until several hours after the rape, making chances of thoughtful, deliberate falsifications highly unlikely. *Id.*

 In the present case, the State offered the written statement that K.M. had given to police two and one half days after the alleged battery. The startling event occurred on November 1, 2000. It is apparent the statement given on November 4, 2000, although related to that event, was not made under the stress of excitement caused by the event. Also, K.M. testified that the statement contained deliberate falsifications.[1] Following the altercation on November 1, 2000, K.M. stayed at the house until the next morning, then went to work for several hours; worked all day the following day; "went out with some friends" Tr. pp. 328 to a bar after work that night; returned home; went back to a tavern that night; stayed at her uncle's house, then finally gave her statement to police on the morning of November 4, 2000. Not only had two and one half days passed between the event and

---

1. Lapse of time between the event and the statement is one focus of the court in deciding whether a statement is an excited utterance. *Hardiman v. State* 726 N.E.2d 1201, 1204 (Ind.2000). Certain facts, however, may also suggest that a delay in time would allow for "deliberate falsifications" of a statement. *Jenkins* 725 N.E.2d 66, 68 (Ind.2000). In the present case, the record indicates that K.M. only gave her statement after she knew Marcum had already reported her to police.

K.M.'s statement, her testimony indicated she was capable of thoughtful reflection and fabrication at the time she gave the statement. Therefore, the statement was inadmissible as an excited utterance.

■ In making its decision to admit this evidence, the trial court also relied on Indiana Evidence Rule 803(5), which provides:

a memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness's memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

In *Smith v. State*, the court reiterated a three-tiered approach to determine the use of recorded recollections: (1) the unaided testimony of a witness is preferred; (2) if the unaided testimony is not available, the law prefers refreshed recollection; and (3) if the witness's recollection cannot be revived, "the recorded recollection exception to hearsay Rule 803(5) may be available to admit the document which contains the witness's prior knowledge of the facts in question." 719 N.E.2d 1289, 1290–91 (Ind. Ct.App.1999).

In the present case, the statement was not offered because K.M. had "insufficient recollection" of the event or was unable to testify fully and accurately. Her testimony indicated that she did have a complete and accurate recollection of the altercation on November 1, 2000, but that she fabricated portions of her statement to implicate Marcum. She testified in detail about the events prior to, during, and after the altercation. The statement offered was not used to refresh her memory of those events, but rather to contradict her testimony. K.M.'s testimony contradicting the written statement is not an "insufficient recollection" that Evidence Rule 803(5) requires. *See id.* The trial court erred in admitting the statement as a recorded recollection.

■ Finally, because K.M.'s written statement is inadmissible hearsay, we address the issue of harmless error. An error is harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Newman v. State*, 719 N.E.2d 832, 837–38 (Ind.Ct.App.1999), *trans. denied* (2000). Reversal is required only if the record reveals that the improper evidence was likely to have had a prejudicial impact on the average juror such that it contributed to the verdict. *Id.*

Here, the State's primary evidentiary focus was on K.M.'s written statement. We agree with the trial court that if the statement was not allowed into evidence "the case is over ..." and it would be "like a home run [for Marcum]." Tr. pp. 172–73. By admitting into evidence an inadmissible hearsay statement where the potential for harm cannot be denied, we cannot conclude that this was harmless error.

### Conclusion

We sympathize with the trial court's efforts to find a proper basis for admitting evidence in domestic battery cases. Unfortunately, we are unable to find such a basis in this case and must reverse.

Reversed.

KIRSCH, J., and MATHIAS, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this appeal on July 24,

2002, marked Memorandum Decision, Not for Publication;

Comes now the Appellant, by counsel, and files herein Motion to Publish Opinion, alleging therein that the opinion of this Court establishes and clarifies the rule of law with regard to evidentiary issues which commonly arise in battery cases in this State and that the establishment and clarification of such rule of law will give clearer guidance to trial courts, defense attorneys and prosecutors across the State.

The Court having examined said Motion, having reviewed its opinion herein and being duly advised, now finds that said Motion to Publish Opinion should be granted.

IT IS THEREFORE ORDERED as follows:

1. The Appellant's Motion to Publish Opinion is granted and this Court's opinion heretofore handed down in this case on July 24, 2002, marked Memorandum Decision, Not for Publication is now ordered published.